UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ARMANDO GOMEZ,

                         Plaintiff,

           -against-

NORTH SHORE LONG ISLAND JEWISH
HEALTH SYSTEM, LISA CANDELARIO, and
JOSE RIVERA, *(sued in their official and individual
Capacity pursuant to New York Executive Law §§ 290
et seq.),*

                         Defendants.
----------------------------------------------------------------X
LISA CANDELARIO, MARIA BARRIOS,
and MARYANN LANG,

                         Plaintiffs,

           -against-

NORTH SHORE-LONG ISLAND JEWISH
HEALTH SYSTEMS, INC.,

                         Defendant.
----------------------------------------------------------------X

**ORDER**
13-CV-2394 (SJF)(ARL)

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   SEP 03 2014   ★

LONG ISLAND OFFICE

FEUERSTEIN, District Judge:

On April 23, 2013, Armando Gomez ("Gomez") filed a civil rights complaint in this

Court pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et*

*seq.* ("Title VII"), and New York Executive Law §§ 290 *et seq.* ("NYEL"), against North Shore

Long Island Jewish Health System ("North Shore LIJ"),[1] Lisa Candelario ("Candelario"), and

Jose Rivera. This action was assigned docket number 13-CV-2394 (the "Gomez Action").

---

[1]      The moving defendant states that "[a]lthough the Amended Complaint names 'North Shore-Long
Island Jewish Health Systems, Inc.' as the Defendant, Plaintiff[] [Candelario was] actually employed by
Southside Hospital which is a member of the North Shore-Long Island Jewish Health System network of
healthcare providers." (Memorandum of Law in Support of North Shore LIJ's Partial Motion to Dismiss

1

On April 24, 2013, Candelario, Maria Barrios ("Barrios"), and Maryann Lang ("Lang") commenced an action against North Shore LIJ, which was assigned docket number 13-CV-2482 (the "Candelario Action"). On October 22, 2013, Candelario, Barrios, and Lang filed a second amended complaint ("Second Amended Complaint"), asserting, *inter alia*, claims of hostile work environment, discrimination, and harassment pursuant to Title VII and NYEL, intentional infliction of emotional distress, retaliation, and negligent supervision, hiring, and retention. [Candelario Action, Docket Entry No. 30].

On November 5, 2013, this Court consolidated the Gomez Action and the Candelario Action for joint trial purposes only, with both cases proceeding under docket number 13-CV-2394. [Docket Entry No. 16].

On January 2, 2014, North Shore LIJ filed a partial motion to dismiss the Second Amended Complaint filed in the Candelario Action ("Partial Motion to Dismiss"). [Docket Entry No. 18]. On January 23, 2014, Lang voluntarily dismissed her claims against North Shore LIJ without prejudice. [Docket Entry No. 24]. On January 29, 2014, Barrios voluntarily dismissed her claims against North Shore LIJ without prejudice. [Docket Entry No. 26]. Pursuant to the notices of voluntary dismissal, all causes of action asserted by Lang and Barrios in the Second Amended Complaint were dismissed without prejudice. [Docket Entry Nos. 25, 27]. Accordingly, all points in North Shore LIJ's Partial Motion to Dismiss regarding causes of action asserted by Lang and Barrios are now moot. Now before the Court are the remaining points in North Shore LIJ's Partial Motion to Dismiss the Second Amended Complaint – Points I

---

[Docket Entry No. 19], at 1 n.1). However, given that the allegations concern events that occurred at North Shore LIJ's Brentwood facility after Gomez was transferred from North Shore LIJ's Southside facility, the Court hereinafter refers to the moving defendant as "North Shore LIJ" to avoid confusion.

and III.[2]  For the reasons set forth below, Points I and III of North Shore LIJ's motion to dismiss are granted.

I.     Background[3]

Candelario alleges that she was employed by North Shore LIJ from 2000 through September 18, 2013, and "held the positions of Nurse's Aid and Medical Records Registrar." (Second Am. Compl., ¶ 11).  According to Candelario, Gomez "touched [her] hair and body, and spoke and looked to/at her in manners of a sexual nature on numerous occasions" between 2005 and 2012.  (*Id.* ¶ 13).  Candelario further alleges that "[s]ometime in the winter of 2010-2011," "Gomez grabbed [her] by her arm, pulled her to his side and kissed her on the lips without her permission or consent."  (*Id.* ¶ 15).  Candelario also alleges that, between 2005 and 2012, she "observed Gomez blow kisses and present 'elevator eyes' to female employees and female patients as young as ten years old," and "offer food and gifts to female employees as an excuse to be in areas where female employees would congregate."  (*Id.* at ¶¶ 16-17).

According to Candelario, between 2005 and 2012, she "informed Gomez that she did not want him touching her, speaking to her about anything not work related, or looking at her in inappropriate ways."  (*Id.* ¶ 18).  Candelario further alleges that, between 2005 and 2011, she informed North Shore LIJ "about Gomez' continued sexual harassment of her, coworkers and

---

[2]     As set forth in North Shore LIJ's January 30, 2014 letter, the following points of the Partial Motion to Dismiss remain active: (i) Point I, which seeks to dismiss Count IV of the Second Amended Complaint (Candelario's claim for intentional infliction of emotional distress); and (ii) Point III, which seeks to dismiss Count XVI of the Second Amended Complaint (Candelario's claim for negligent supervision, hiring, and retention). [Docket Entry No. 28].

[3]     The facts are taken from the allegations in the Second Amended Complaint, which the Court assumes to be true for purposes of the instant motion to dismiss. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009) (On a motion to dismiss, the Court "consider[s] the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor. (citation omitted)).

3

patients." (*Id.* ¶ 19). On November 9, 2011, "Candelario complained to [North Shore LIJ] in writing about Gomez' continued sexual harassment," yet "[North Shore LIJ] never adequately addressed Gomez' behavior and said behavior continued." (*Id.* ¶¶ 20-21).

Candelario alleges that on or about January 18, 2012, "[North Shore LIJ] notified [her] in writing that her complaints were unfounded" and her "behavior had been investigated as well and that she needed to conduct herself in accordance with workplace policies." (*Id.* ¶ 23). Furthermore, Candelario claims that she was informed by North Shore LIJ "on numerous occasions that she (Candelario) should cease making complaints about Gomez." (*Id.* ¶ 24).

According to Candelario, she "worked in a hostile environment" and "feared going to and being at work by having to see and be near Gomez and having to work for managers and supervisors of [North Shore LIJ] who ignored her (Candelario's) complaints and outcries and suffered while at work and while at home." (*Id.* ¶¶ 26-27). Candelario alleges that she suffers from physical and emotional distress "as a result of [North Shore LIJ's] failure to address her complaints." (*Id.* ¶¶ 28-29). Candelario obtained a right to sue letter from the United States Equal Employment Opportunity Commission in February 2013. (*Id.* ¶ 30).

On September 18, 2013, Candelario's employment was terminated for a payroll discrepancy, "in which it was alleged that Candelario had put in for two hours of overtime on August 9, 2013 for which she had not worked." (*Id.* ¶¶ 34-36).

Candelario asserts the following claims against North Shore LIJ: (i) hostile work environment, discrimination, and harassment in violation of Title VII (Count I); (ii) intentional infliction of emotional distress (Count IV); (iii) retaliation (Count VII); (iv) harassment pursuant to NYEL (Count X); (v) retaliation pursuant to NYEL (Count XIII); and (vi) negligent supervision, hiring, and retention (Count XVI).

4

North Shore LIJ has filed the instant Partial Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), seeking, *inter alia*, dismissal of Counts IV (intentional infliction of emotional distress) and XVI (negligent supervision, hiring, and retention).

II.    Analysis

A.    Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.

Moreover, in deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe all the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Aegis Ins. Servs., Inc. v. 7 World Trade Co.,*

5

*L.P.*, 737 F.3d 166, 176 (2d Cir. 2013); *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013). However, this tenet "is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679, 129 S.Ct. 1937; *see also Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) ("A court can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." (internal quotation marks and citation omitted)). Nonetheless, a plaintiff is not required to plead "specific evidence or extra facts beyond what is needed to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120-21 (2d Cir. 2010); *see also Matson v. Bd. of Educ. of City School Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) ("While a complaint need not contain detailed factual allegations, it requires more than an unadorned, the defendant-unlawfully-harmed-me accusation." (internal quotation marks and citations omitted).

>     B.     Intentional Infliction of Emotional Distress

"Under New York law, a claim of intentional infliction of emotional distress requires; '(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress.'" *Conboy v. AT & T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (quoting *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999)). "[T]he standard for stating a valid claim of intentional infliction of emotional distress is 'rigorous, and difficult to satisfy.'" *Id.* (quoting *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 122, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993)). "The conduct must be 'so outrageous in character, and so extreme in

degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Id.* (quoting *Stuto*, 164 F.3d at 827). Candelario's allegations in this action do not meet this "rigorous" standard. *See e.g.*, *Semper v. N.Y. Methodist Hosp.*, 786 F. Supp. 2d 566, 587 (E.D.N.Y. 2011) ("Acts which merely constitute harassment, disrespectful or disparate treatment, a hostile work environment, humiliating criticism, intimidation, or insults or other indignities fail to sustain a claim of intentional infliction of emotional distress because the conduct alleged is not sufficiently outrageous.") (citation omitted).

Moreover, "New York courts do not, as a rule, extend the tort of intentional infliction of emotional distress to employment discrimination claims." *Kelly v. N. Shore Long Island Health System*, No. 13-CV-1284, 2014 WL 2863020, at *11 (E.D.N.Y. June 22, 2014) (quoting *Virola v. XO Commc'n*, No. 05-CV-5056, 2008 WL 1766601, at *21 (E.D.N.Y. Apr. 15, 2008); *see also Wilson v. Am. Broad. Co.*, No. 08-CV-1333, 2009 WL 8743559, at *8 (S.D.N.Y. Mar. 31, 2009). "[F]ederal courts in New York routinely dismiss claims of [intentional infliction of emotional distress] in the employment context, with the only exception being where employment discrimination claims are accompanied by allegations of both sexual harassment and battery." *Ibraheem v. Wackenhut Servs., Inc.*, No. 09-CV-5335, 2014 WL 1873393, at *14 (E.D.N.Y. May 9, 2014) (citations omitted).

No such allegations are present here. At best, Candelario has pleaded facts showing that she may have been subject to employment discrimination, harassment, and/or a hostile work environment, which are at issue in Candelario's pending claims. The facts as alleged are inadequate, as a matter of law, to rise to the "extreme and outrageous" levels needed to sustain a

claim for intentional infliction of emotional distress. Accordingly, Candelario's claim for intentional infliction of emotional distress is dismissed.

### C. Negligent Supervision, Hiring, and Retention

North Shore LIJ seeks to dismiss Count XVI on the grounds that it is barred as a matter of law by the New York Workers' Compensation Law.[4] Specifically, the statute provides "[t]he right to compensation or benefits under this chapter, shall be the exclusive remedy to an employee . . . when such employee is injured . . . by the negligence or wrong of another in the same employ." N.Y. Workers' Comp. Law § 29(6). The Second Circuit has affirmed dismissals by district courts of negligent supervision, hiring, and retention claims on this basis. *See e.g.*, *Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 137-38 (2d Cir. 2001) (affirming dismissal of negligent supervision and retention claims based on sexual assault by a co-worker as barred by New York Workers' Compensation Law); *Torres v. Pisano*, 116 F.3d 625, 640 (2d Cir. 1997) (affirming dismissal of negligent supervision claim based on alleged hostile work environment due to harassment by a co-worker as barred by New York Workers' Compensation Law). Accordingly, Candelario's negligence claim is dismissed because it is barred by the New York Workers' Compensation Law.

---

[4]     Candelario does not contest that her negligence claim is barred by the New York Workers' Compensation Law, nor has she opposed the portion of North Shore LIJ's Partial Motion to Dismiss regarding her negligence claims. Candelario, along with Barrios and Lang, submitted one (1) joint opposition to the Partial Motion to Dismiss (the "Opposition"), prior to the voluntary dismissals by Barrios and Lang. The sole challenge in the Opposition to North Shore LIJ's argument that the negligence claims are barred by the New York Workers' Compensation Law pertains to potential unfairness to Lang. (Opp. to North Shore LIJ's Mot. to Dismiss [Docket Entry No. 20], at 8-9).

III. Conclusion

For the foregoing reasons, North Shore LIJ's Partial Motion to Dismiss is granted with respect to Counts IV and XVI of the Second Amended Complaint. Accordingly, Candelario's claims for intentional infliction of emotional distress and negligent supervision, hiring, and retention are dismissed with prejudice.

**SO ORDERED**.

s/ Sandra J. Feuerstein

Sandra J. Feuerstein
United States District Judge

Dated: September 3, 2014
       Central Islip, New York